IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CAMERON ROBINSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 3:22-cv-00102 ) |
| WELL PATH, et al., | ) JUDGE RICHARDSON ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is a *pro se* Complaint for violation of civil rights (Doc. No. 1) filed pursuant to 42 U.S.C. § 1983 by Plaintiff Cameron Robinson, a pretrial detainee in the custody of the Davidson County Sheriff's Office (DCSO) in Nashville, Tennessee. Plaintiff has also filed an application for leave to proceed in forma pauperis (IFP) (Doc. No. 2).

The case is now before the Court for ruling on the IFP application and an initial review of the Complaint pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

## APPLICATION TO PROCEED IFP

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). Because it is apparent from Plaintiff's IFP application that he lacks the funds to pay the entire filing fee in advance, that application (Doc. No. 2) is **GRANTED**.

Under Section 1915(b), Plaintiff nonetheless remains responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides

prisoner-plaintiffs the opportunity to make a "down payment" of a partial filing fee and to pay the remainder in installments. Accordingly, Plaintiff is hereby **ASSESSED** a $350 filing fee, to be paid as follows:

(1) The custodian of Plaintiff's inmate trust-fund account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, as an initial payment, "20 percent of the greater of – (A) the average monthly deposits to [Plaintiff's] account; or (B) the average monthly balance in [Plaintiff's] account for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(b)(1).

(2) After the initial filing fee is fully paid, the trust-fund officer must withdraw from Plaintiff's account and pay to the Clerk monthly payments equal to 20% of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10. Such payments must continue until the entire $350 filing fee is paid in full. *Id.* § 1915(b)(2).

(3) Each time the trust account officer makes a payment to this Court as required by this Order, he must print a copy of the prisoner's account statement showing all activity in the account since the last payment made in accordance with this Order and submit it to the Clerk along with the payment. All submissions to the Court must clearly identify Plaintiff's name and the case number as indicated on the first page of this Order, and must be mailed to: Clerk, United States District Court, Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

The Clerk of Court is **DIRECTED** to send a copy of this Order to the Warden of the prison in which Plaintiff is currently housed to ensure that the custodian of Plaintiff's inmate trust account complies with the portion of 28 U.S.C. § 1915 pertaining to payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian **MUST** ensure that a copy of this Order follows Plaintiff to his new place of confinement for continued compliance with this

2

Case 3:22-cv-00102   Document 5   Filed 06/08/22   Page 2 of 10 PageID #: 24

Order.

## INITIAL REVIEW OF THE COMPLAINT

I. PLRA SCREENING STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, Section 1915A provides that the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, upon "view[ing] the complaint in the light most favorable to the plaintiff[.]" *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A pro se pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a

3

plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

## II. SECTION 1983 STANDARD

Plaintiff seeks to vindicate alleged violations of his rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

## III. ALLEGATIONS AND CLAIMS

Plaintiff alleges that, on November 22, 2021, he slipped and fell in water on the floor of his cell that had leaked from the bathroom wall. (Doc. No. 1 at 6.) He alleges that officers in the area immediately came to check on him, and that Lt. Slusher stated that "this wall has been leaking for a while from time to time." (*Id.*) Plaintiff felt immediate pain in his elbow, left shoulder, back, and neck, and alleges that his shoulder bone was "clearly sticking out." (*Id.*) He asked to be taken to the hospital, but "was denied medical care for weeks." (*Id.*) However, Plaintiff alleges that x-rays were taken four days after his fall, "which show serious medical problems that has still been neglected." (*Id.*) He states that he believes he suffered additional injuries that would be revealed by further x-rays, but DCSO medical staff has denied him x-rays "of [his] whole spinal cord because of limited resources." (*Id.*)

Plaintiff claims that Defendants Slusher, Well Path,[1] Metropolitan Government of Nashville and Davidson County, and DCSO violated his Eighth, Thirteenth, and Fourteenth Amendment rights (*id.* at 1–2, 6) by unreasonably failing to protect him from the substantial risk of harm from a known water leak, which "a reasonable officer in the circumstances would have appreciated" (*id.* at 9), and by refusing to provide him appropriate medical treatment after his fall. (*Id.* at 6.) He further claims a right to unspecified injunctive relief under the federal civil rights statutes and monetary relief under negligence-based state laws concerning personal injury and governmental tort liability. (*Id.* at 8.) Plaintiff seeks $2 million in damages. (*Id.* at 7.)

IV. ANALYSIS

Liberally construed, the Complaint raises two federal constitutional claims, analyzed below: that Defendants failed to protect Plaintiff from harmful prison conditions, and that they were deliberately indifferent to his serious medical needs. The Complaint also raises claims under state tort law, which the Court need not consider at this initial stage.

As a preliminary matter, Plaintiff's mere reference to a cause of action under the "Thirteenth Amendment (involuntary servitude[)]" (Doc. No. 1 at 6) is unavailing. He does not allege that he was imprisoned for failure to pay a civil debt or otherwise subjected to "coerc[ion] by threat of legal sanction to work off a debt to a master," as required to support such a claim under Section 1983. *Alkire v. Irving*, 330 F.3d 802, 816 (6th Cir. 2003) (quoting *United States v. Kozminski*, 487 U.S. 931, 943 (1988)). Nor are Thirteenth Amendment concerns implicated by the facts Plaintiff does allege. Accordingly, the Complaint fails to state any viable claim under the Thirteenth Amendment.

---

[1] "Wellpath, formerly known as Correct Care Solutions, has worked with the Metro [Public] Health Department and the Davidson County Sheriff's Office since 2005." https://www.mainstreet-nashville.com/townnews/medicine/covid-19-cases-in-davidson-county-jail-down-85-from-august-peak/article_631e4548-26c8-11ec-b25e-231e2d4ea413.html (last visited June 6, 2022).

As a pretrial detainee whose "constitutional status differs from that of convicted prisoners," Plaintiff properly asserts his failure-to-protect and medical-care claims under the Due Process Clause of the Fourteenth Amendment rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Westmoreland v. Butler Cnty., Kentucky*, 29 F.4th 721, 727 (6th Cir. 2022); *Brawner v. Scott Cnty., Tenn.*, 14 F.4th 585, 595–96 (6th Cir. 2021). The Fourteenth Amendment requires that pretrial detainees not be subjected to any punishment—cruel, unusual, or otherwise—prior to an adjudication of guilt. *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015) ("[P]retrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'") (citation omitted).

To state a viable claim that a DCSO official exposed him to punishment by failing to protect him from harm, Plaintiff's allegations must show that the official was "deliberately indifferent" to a substantial or excessive risk from the water leaking from the bathroom wall. "[T]he deliberate indifference test in a pretrial detainee's failure-to-protect claim is an objective determination." *Westmoreland*, 29 F.4th at 731. Accordingly, the test of deliberate indifference in this context is concerned not with whether the defendant officer had the subjective intention to cause (or fail to prevent) harm, but with whether the officer "act[ed] intentionally in a manner that put[] the plaintiff at substantial risk of harm, without taking reasonable steps to abate that risk, and by failing to do so actually cause[d] the plaintiff's injuries." *Id.* at 729. Merely negligent conduct will not expose a prison official to liability under Section 1983. *Id.* at 728, 730; *see also Kingsley*, 576 U.S. at 396 (observing that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process") (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)); *Daniels v. Williams*, 474 U.S. 327 (1986); *Brawner*, 14 F.4th at 596 (finding that "[m]ere negligence is insufficient" to show deliberate indifference in detainee case).

6

The risk to prisoner safety from a condition producing slick spots on prison floors, even where that condition is known to or reasonably foreseeable by a prison official, has been ruled insufficient to support a constitutional claim. *See Chamberlain v. Nielsen*, No. 2:10-CV-10676, 2010 WL 1002666, at *2 (E.D. Mich. Mar. 18, 2010) ("Federal courts have consistently held that slippery prison floors and icy walkways do not give rise to a constitutional violation.") (collecting cases). While a wet floor "presents the possibility for an inmate to slip and fall, it does not pose a substantial or excessive risk of serious harm" and therefore fails to trigger Fourteenth Amendment protections. *Id*. In *Swartz v. Hurt*, No. 91-3756, 1992 WL 21557 (6th Cir. Feb. 10, 1992), the Sixth Circuit considered the claim of an inmate who slipped and fell due to a leaking heater in his housing unit. Although "the defendants had been aware for a number of months that the heater leaked and that this created a dangerous situation, but . . . nevertheless persistently refused to repair the heater," the Sixth Circuit found that Swartz had at best "alleged the existence of unsafe living conditions and the negligence of the defendants in exposing him to injury," a claim that he must pursue under the applicable state governmental tort liability act. *Id.* at *1.

Here, Plaintiff alleges that Defendants, in choosing not to address a leak from the bathroom wall that occurred "from time to time," "made an intentional decision with respect to the conditions under which the Plaintiff was confined" that "put the Plaintiff at substantial risk of suffering serious harm." (Doc. No. 1 at 6, 9.) Consistent with the authorities cited above, the Court finds that Plaintiff's exposure to the risk of harm from an intermittent leak was not so substantial or excessive as to violate his Fourteenth Amendment right to be free from punishment. Moreover, the "intentional" failure to remedy this intermittent leak in a bathroom wall is not the type of conduct that would support an objective determination of deliberate indifference to Plaintiff's safety; rather, as in *Swartz*, Plaintiff has at best alleged that Defendants negligently exposed him

to injury by their inaction. Any remedy for this negligent infliction of harm must be pursued under state law. Plaintiff's failure-to-protect claim under the Fourteenth Amendment is subject to dismissal.

Similarly, in the context of the alleged denial of constitutionally adequate medical care, deliberate indifference entails conduct that "amount[s] to more than ordinary negligence or medical malpractice." *Atkins v. Parker*, 972 F.3d 734, 739 (6th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)); *Brawner*, 14 F.4th at 596. It also requires a demonstration of an "objectively serious medical need." *Greene v. Crawford Cnty., Mich.*, 22 F.4th 593, 607 (6th Cir. 2022) (quoting *Brawner*, 14 F.4th at 597). Plaintiff alleges that his fall produced immediate pain in his elbow, left shoulder, back, and neck, and that his "shoulder bone was clearly sticking out." (Doc. No. 1 at 6.) His request "to be taken to the hospital to be checked out" was denied, and x-rays taken four days later revealed "serious medical problems." (*Id.*) Those problems were allegedly "neglected," and additional x-rays "of [his] whole spinal cord" were denied "because of limited resources." (*Id.*) Plaintiff does not specify the nature of the "problems" revealed by the early x-ray, nor does he identify any symptoms or limitations that endured beyond this initial period of days, though he states that he "beleave[s] (sic) additional injur[ie]s did accure (sic)." (*Id.*)

These allegations are almost entirely conclusory. Other than the reference to a shoulder bone "clearly sticking out," the Complaint is devoid of factual allegations from which the Court could reasonably infer that Plaintiff's allegedly neglected medical need was objectively "serious enough to violate the Constitution." *Greene*, 22 F.4th at 605 (citations omitted). Plaintiff obviously disagrees with the medical staff's decision to evaluate him in-house and to order just one x-ray. But "[t]he plaintiff's personal belief that he should have received a different type of treatment or

8

been sent to an outside hospital simply does not support a constitutional claim." *King v. King*, No. 3:08-0881, 2009 WL 2223305, at *2 (M.D. Tenn. July 20, 2009) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.")). Even if his allegation that further x-rays were denied "because of limited resources" could be liberally construed to support the corporate/municipal liability of Wellpath and Davidson County for that denial,[2] the paucity of allegations to support an objective need for further treatment derails any such claim. In short, the Complaint, even construed in the light most favorable to Plaintiff, does not provide sufficient factual grounds for forwarding his medical-needs claim.

While the Complaint is not viable as currently constituted, the Court in the interest of justice will give Plaintiff the chance to amend his Complaint to provide factual allegations in support of his claim of deliberate indifference to serious medical needs. *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) (holding "that under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA").

## **CONCLUSION**

As described above, Plaintiff's IFP application (Doc. No. 2) is **GRANTED**, and the $350 filing fee is **ASSESSED** against his inmate trust account.

While the Complaint is subject to dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim on which relief may be granted, the Court will allow Plaintiff to file an amended

---

[2] In no event could this possibly support municipal liability for *DCSO* (as distinguished from *Davidson County*), which is not a proper defendant under Section 1983. "[F]ederal district courts in Tennessee have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit." *Mathes v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:10-cv-0496, 2010 WL 3341889, at *2–3 (M.D. Tenn. Aug. 25, 2010) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)).

complaint addressing the deficiencies highlighted above within **30 DAYS** of the entry of this Order. The Clerk is **DIRECTED** to provide Plaintiff with an appropriate form for filing a Section 1983 complaint (Pro Se Form 14). Plaintiff must use the form provided by the Clerk and must include responsive information in all fields of the form. Plaintiff is cautioned that failure to file an amended complaint within 30 days or to seek an extension of this deadline before it expires will result in dismissal of this action.

      IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE